

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

DEC 2 8 2015

CLERK, US DISTRICT COURT
NORFOLK, VA

ELAINE CAROL LITTLE,                    :
                                        :
          Plaintiff,                    :
                                        :
v.                                      :          Action No. 2:15-cv-47
                                        :
CAROLYN W. COLVIN,                      :
Acting Commissioner,                    :
Social Security Administration,         :
                                        :
          Defendant.                    :

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Elaine Carol Little's ("Ms. Little") complaint

filed pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the

Defendant, the Acting Commissioner of the Social Security Administration ("Acting

Commissioner"), denying Ms. Little's claim for Disability Insurance Benefits ("DIB") pursuant

to Title II of the Social Security Act. Both parties have filed motions for summary judgment,

ECF Nos. 8 and 11, which are now ready for recommended disposition. This action was referred

to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§

636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil

Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United

States Magistrate Judges. After reviewing the briefs, the undersigned makes this

recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local

Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Ms. Little's

Motion for Summary Judgment and Motion for Remand, ECF Nos. 8 and 9, be **DENIED**; the

1

Defendant's Motion for Summary Judgment, ECF No. 11, be **GRANTED**; and the final decision of the Acting Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

On August 18, 2008, Ms. Little initially filed her application for DIB, alleging a disability onset date of July 29, 2008 due to a "mini stroke" she suffered in July of 2008. R. 82-83.[1] To qualify for DIB, Ms. Little was required to have insurance coverage at the time of her disability onset. 42 U.S.C. § 423(a); 20 C.F.R. §§ 404.101(a); 404.131(a). Ms. Little's date last insured ("DLI") is September 30, 2008. R. 553. Accordingly, Ms. Little has the burden of establishing the existence of a disability on or before that date.

Her application was initially denied on October 16, 2008, *id.* at 44-48, and again denied upon reconsideration on June 19, 2009, *id.* at 53-58. Ms. Little then requested a hearing in front of an administrative law judge ("ALJ"), which was conducted on May 11, 2010. *Id.* at 22-41. The ALJ, Judge William T. Vest, issued a decision denying Ms. Little's DIB application on June 16, 2010. *Id.* at 8-10. On July 1, 2010, Ms. Little filed a request with the Appeals Council to reconsider Judge Vest's decision. *Id.* at 7. On March 30, 2012, the Appeals Council denied Ms. Little's request for review, making the ALJ's decision the Commissioner's final decision. *Id.* at 1-3. Having exhausted her administrative remedies, Ms. Little filed a complaint for judicial review of the Acting Commissioner's decision on May 31, 2012. ECF No. 1 (2:12cv300). On June 7, 2013, the United States District Judge Raymond A. Jackson of the Eastern District of Virginia remanded the case to the ALJ to clarify whether the use of "boilerplate language" was

---

[1] "R." refers to the certified administrative record that was filed under seal on April 7, 2015, pursuant to Local Civil Rules 5(B) and 7(C)(1).

the "proper decisional process" for the ALJ to use when "reaching his Residual Function Capacity [("RFC")] determination and evaluating the Plaintiff's credibility."[2] R. 601-10. The Appeals Council, pursuant to Judge Jackson's order, remanded the case to the ALJ on August 13, 2013. *Id.* at 628-33. On February 10, 2014, the same ALJ, Judge Vest, conducted a hearing whereat Ms. Little, her counsel, Colleen Ilacqua, her husband, James Little, and an impartial vocation expert, Linda Augins, appeared. *Id.* at 550-600.

On February 25, 2014, Judge Vest denied Ms. Little's application for DIB, finding that Ms. Little had the RFC to perform past relevant work as a data entry operator. *Id.* at 531-44. Judge Vest's notice of denial indicated that Ms. Little had thirty days to file written exceptions to the Appeals Council from the date she received the notice, and the Appeals Council would assume that Ms. Little received the notice five days after it was issued unless Ms. Little proved otherwise. *Id.*

On March 26, 2014, Ms. Little filed a request with the Appeals Council to reconsider Judge Vest's decision. *Id.* at 529. On December 1, 2014, the Appeals Council denied Ms. Little's request for review, making Judge Vest's decision the Commissioner's final decision. *Id.* at 514-17. Having exhausted her administrative remedies, Ms. Little filed the instant complaint for judicial review of the Acting Commissioner's decision on February 2, 2015. ECF No. 1. The Acting Commissioner filed an Answer on April 7, 2015. ECF No. 4. Ms. Little filed her Motion for Summary Judgment with a Memorandum in Support on May 14, 2015, ECF Nos. 8, 9, and the Acting Commissioner filed a Cross-Motion for Summary Judgment and a Memorandum in Support on June 19, 2015, ECF Nos. 11, 12. No additional briefing was filed,

---

[2] Judge Jackson considered a Report and Recommendation issued by United States Magistrate Judge Tommy E. Miller on March 12, 2013. R. 611-27.

and the matter was referred to the undersigned U.S. Magistrate Judge on June 22, 2015. ECF No. 6.

## II. RELEVANT FACTUAL BACKGROUND

In her application, Ms. Little alleged a disability onset date of July 29, 2008, R. 82, with a DLI of September 30, 2008, *Id.* at 553. As of her DLI, Ms. Little was a 60-year-old female who had graduated from high school and was married. *Id.* at 555. At the hearing on February 10, 2014, Ms. Little provided the following testimony:

Ms. Little testified that she retired and relocated from New York to Virginia Beach in December 2003 with her husband. *Id.* at 554-55. Ms. Little had worked as a data entry operator in New York since 1968, first at H.E. Becker and then at Depository Trust Company ("DTC"). *Id.* at 555-56. After DTC phased out its data entry department, the company placed Ms. Little in the vault, where she worked pulling coupons for bearer bonds. *Id.* at 569. In this capacity, Ms. Little testified that she was constantly getting up and down from her seat and was required to lift boxes of approximately ten to twenty pounds: "[The boxes] were between 10-20 pounds that we would have to lift and that was lifting, bringing to your desk, doing the clipping, putting it back, lifting, taking it back and that was all day, all day." *Id.* at 568-71. Ms. Little last worked for Virginia Beach Public Schools as a teacher's assistant for approximately seven to eight months between late 2007 and early 2008. *Id.* at 556-57. She stopped working as a teacher's assistant because she was hospitalized for stroke-like symptoms or a transient ischemic attack ("TIA") that occurred in June of 2008. *Id.* at 557.

Ms. Little testified that she does not remember many of the details of her TIA but that she remembers being at the hospital and learning that her cholesterol was "out the window." *Id.* at

557-58. Ms. Little testified that at the hospital she was prescribed Zocor and instructed to take a baby aspirin daily. *Id.* at 562. Ms. Little also testified that she experienced "periodic periods of confusion" as a result of her TIA, that these episodes have somewhat resolved, and that she still sees her treating physician Dr. Michael Charles ("Dr. Charles") every four months for treatment. *Id.* at 558-59. Later, she testified that the TIA caused her to develop anxiety and insomnia. *Id.* at 572-73. Because she feared having another TIA, she was too scared to drive for a while after her TIA but did start driving again. *Id.* at 559. Additionally, Ms. Little stated that prior to her TIA she could not lift more than five pounds because she had arthritis in her cervical spine, and pain in her right knee. *Id.* at 560-61. Ms. Little explained her treatment for her back and knee, stating that she gets steroid injections every four months and takes Flexeril and Vicodin as needed when she is in pain. *Id.* at 561.

She testified that in 2008 she was able to do light housework including sitting to fold laundry, tend to her flowerpots, and wash some dishes but could not scrub floors or bathrooms. *Id.* at 561, 564. She clarified that she could not bend over to do any of these chores. *Id.* at 561. Ms. Little testified that she was able to walk around the park, which she estimated to be under a mile, and she did so to keep her joints lubricated. *Id.* at 562-63. She explained that she could walk at a moderate pace for about twenty to thirty minutes with small breaks to rest and no cane, but that she fell twice when her knee gave out. *Id.* at 577-78. She stated that in 2008 she used her cane occasionally when it was "absolutely necessary" but now she uses it "a lot." *Id.* at 578-79. Ms. Little also mentioned that she would visit with her grandkids. *Id.* at 562. She also estimated that she could stay seated for about half an hour to a full hour and then she would have to stand or elevate her legs. *Id.* She testified that she was always able to dress and bathe herself. *Id.* at 564. She also could use a personal computer for about fifteen minutes at a time to check

5

email. *Id.* In 2008, her husband had to do all of the grocery shopping because she could not lift more than five pounds due to her arthritis, and that she had severe back muscle spasms every two to three days. *Id.* at 575. The muscle spasms, which occurred every other day or every three days, would be sharp pains followed by tightening muscles. *Id.* If Ms. Little could not walk through the store, she would sit in the truck until her husband finished the grocery shopping. *Id.* at 574. In treating the pain, she stated that pain relief injections "help not all the time, but most of the time," *Id.* at 583, and that medication helps but she still feels the pain and some medication makes her drowsy, *Id.* at 584. Overall her mood at the hearing was quite positive regarding her state of health: "[F]or the most part, I'm doing okay. I'm doing the best I can, but I'm doing all right. I'm not going to stop, I'm not going to let this make me stop living. . . . I have my good days and I have my bad days." *Id.* at 565-66. She described a bad day as a day where she would not be able to do anything because of the pain and would have to relax. *Id.* at 585.

Ms. Little's husband, James Little ("Mr. Little), also testified. *Id.* at 587. When asked about his wife's medical problems in 2008, Mr. Little stated,

> [S]he's been having this problem in her back, lower right side. She had trouble walking, long walking I should say. And she can't sit for very long. She can't really lift anything. Once she bends over, it's hard for her to straighten up. Once she sits for awhile, she gets stiff and she has trouble standing. Once she gets up, she has to, I guess you would say straighten it out. . . . Sometimes it's worse than others.

*Id.* at 587-88. Mr. Little confirmed his wife's situation regarding good and bad days and said she would have bad episodes that required her to stay in bed. Mr. Little also confirmed that Ms. Little "can't really bend over. If she bends over, she can't do anything." *Id.* at 591.

According to her medical records, Ms. Little was sixty years old at her disability onset date. *Id.* at 84. She was diagnosed with degenerative joint disease and degenerative disc disease

in 2007. *Id.* at 309. Ms. Little was admitted to the hospital on July 29, 2008 after experiencing an intense period of confusion that lasted about six minutes. *Id.* at 168, 185. She was evaluated for a "TIA workup" that returned a negative result. *Id.* at 185. It was also indicated that even though the workup was negative, the TIA could have been small enough that it went undetected by an MRI machine. *Id.* Other exams regarding her brain, arteries, extremity function, lungs, sensation, and nerves were all normal except her LDL cholesterol, which was relatively high. *Id.*

On August 27, 2008, Ms. Little went in for a follow-up for her TIA with Dr. Charles. *Id.* at 364. In his progress notes, he indicated that all of the information he collected was provided by the patient (*i.e.* what Ms. Little reported to him) and that since the TIA nothing had changed. *Id.* He stated that "[t]he symptoms are worsened by nothing. The symptoms are relieved by medications. . . . The treatment(s) provided significant relief." *Id.*

Dr. Charles indicated in a letter on February 4, 2009 that after Ms. Little was diagnosed with her TIA, she was treated with Zocor and Aspirin. *Id.* at 246. He followed up with Ms. Little on October 27, 2008, as Ms. Little "had been having problems with performing her job" apparently because of stress. *Id.* Based on the stress she reported, he prescribed her Xanax. *Id.* He also stated that "[t]here has been no improvement in the symptoms since the TIA and these are probably permanent conditions. It is my opinion that Mrs. Little will not be able to perform her job indefinitely." *Id.* In his progress notes on October 27, 2008, Dr. Charles indicated that Ms. Little came in for an insomnia assessment because she was having trouble sleeping. *Id.* at 359. He stated that she did not have chest pain, abdominal pain, headaches or shortness of breath but had been having problems sleeping every few days and had yet to try anything for the symptoms. *Id.* Upon a complete exam, he noted she was negative for blurred vision, pain, dizziness, and focal weakness, and that she was oriented and not distressed with normal

7

judgment and affect. *Id.* at 359-60

On December 30, 2008, Dr. Charles completed a Multiple Impairment Questionnaire ("MIQ"). *Id.* at 186. Dr. Charles noted that his diagnosis of Ms. Little was a TIA and supported this finding with facts such as "confusion at first episode, inability to handle stress, concentration problems." *Id.* Under question eight, which asks about the nature of the patient's pain, Dr. Charles wrote down "No pain." *Id.* at 187. He left many other questions blank, including indicating any range or level of Ms. Little's pain, addressing her ability to work in a five-day-a-week environment, her ability to use her upper extremities during an eight-hour work day, etc.[3] *Id.* at 188-89. He did, however, conclude that Ms. Little's symptoms would likely increase if she were placed in a competitive work environment. *Id.* at 190.

Records also indicate that Ms. Little had breast cancer in 1991. *Id.* at 196. In April of 2009, Dr. Charles wrote up an overview of Ms. Little's history with breast cancer, indicating that "Ms. Little is an alert, pleasant female in no acute distress." *Id.* at 197.

On August 11, 2009, Dr. Charles wrote a letter stating:

> [Ms. Little] has a history of arthritis affecting most of her joints and spine. This causes attacks of pain which limits her activity severely. She just takes her meds and stays in bed those days. . . . [She] tries to stay as active as she can. We see her 2-3 times a year for this condition. She has had x-rays of her spine and her knees, confirming the arthritis. This condition is chronic and gradually progressive. She also had a TIA in July 08. She was confused at that point. Since then she has recovered mostly but still gets episodes when she repeats herself. She will be seeing a neurologist for this. Both of these conditions are considered permanent re her disability. Her arthritis is chronic and progressive. Her TIA is chronic but stable now.

*Id.* at 225. On September 21, 2009, Ms. Little saw a neurologist, Dr. Marie T. Holland, M.D.

---

[3] In January of 2010, Ms. Little's attorney advised the ALJ that Dr. Charles had filled out another MIQ, only addressing Ms. Little's ability to work. R. 297. In that MIQ, Dr. Charles noted that Ms. Little could only sit for two hours and stand/walk for one hour during an eight-hour work day. *Id.* at 301. He also recommended that she should not sit straight for long periods of time but should get up every hour to move around. *Id.* She also could only occasionally lift and carry between five and ten pounds. *Id.* at 302.

("Dr. Holland"), to assess her TIA status. *Id.* at 294. Dr. Holland found that, physically, Ms. Little had no difficulty walking, was well developed and oriented with no distress. *Id.* at 295. Ms. Little had just started a new exercise program, which Dr. Holland encouraged her to keep up as to help with anxiety. *Id.* at 296. Dr. Holland stated that it is possible that Ms. Little's July 2008 episode of confusion was a TIA, but another possible consideration would be that she had a partial seizure or, even less likely, transient global amnesia. *Id.* She also noted that Ms. Little had not had any recurring episodes and that no further testing was needed since it had been a year since her last episode. *Id.* Lastly, Dr. Holland stated that she and Ms. Little "discussed that TIA would not be a reason for pursuing disability." *Id.*

On October 16, 2008, state agency physician Carolina Longa, M.D. ("Dr. Longa"), assessed Ms. Little's alleged impairment of a "mini stroke" (the TIA), and found that "[b]ased on the overall evidence of record, the impairment is non-severe." *Id.* at 185. On June 16, 2009, state agency physician Patricia Staehr, M.D. reviewed all the evidence in Ms. Little's file and affirmed Dr. Longa's decision that the impairment was non-severe. *Id.* at 224.

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Acting Commissioner, and it is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the Acting Commissioner is supported by substantial evidence in the record. *Id.* The ALJ must determine if "(1) the claimant is engaged in substantial gainful activity; (2) the

claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment." *Strong v. Astrue*, No. 8:10-cv-357-CMC-JDA, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity). "An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520).

Under this five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law. First, Ms. Little did not engage in substantial gainful activity since July 29, 2008, the alleged onset date of disability. R. 536. Second, Ms. Little had the following severe impairments: degenerative disc disease of the lumbar spine and degenerative joint disease of the right knee. *Id.* (citing 20 C.F.R. § 404.1520(c)) ("These impairments and their symptoms limit the claimant's physical abilities to do basic work activities, such as sitting, standing, walking, lifting, carrying, and engaging in postural activities."). Third, Ms. Little did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 538-39. The ALJ went on to discuss the severe impairments under listings 1.04 and 1.02, and explained why

10

neither degenerative disc disease nor degenerative joint disease of the knee met the listing in Ms. Little's case. *Id.*

Fourth, the ALJ found that Ms. Little had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(a) with the following limitations:  She could lift and carry only ten pounds frequently and twenty pounds occasionally; she could sit for eight hours within an eight hour workday; she could stand and walk for four hours within an eight-hour workday, alternating sitting and standing every thirty minutes; she could engage in only occasional stooping and squatting, but could not crawl; and she could not climb or work at unprotected heights or around dangerous machinery. *Id.* at 539.  Because the ALJ found Ms. Little could perform light work, the ALJ also found Ms. Little was capable of performing past relevant work as a computer data entry operator, as it was actually performed by Ms. Little. *Id.* at 543-44.  Therefore, based on this determination, the ALJ ended his analysis at step four, and concluded that Ms. Little was not under a disability as defined by the Social Security Act at any time from July 29, 2008, the alleged onset date, through September 30, 2008, her DLI.  *Id.* at 544 (citing 20 C.F.R. § 404.1520(f)).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Acting Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.

It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Acting Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Acting Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

### A. The ALJ Did Not Err by Finding That Ms. Little Could Perform Her Past Work.

Ms. Little argued that "the ALJ misunderstood the VE's testimony since the [VE] stated that the RFC found would preclude Ms. Little from performing her past work both as she performed it in the past and as the job is defined by the Dictionary of Occupational Titles ("DOT")." ECF No. 10 at 9. She further argued that because she met her burden of proof that she could not perform her past relevant work, the burden shifted to the Defendant to show that there is alternative work that she could perform, and, because the Defendant did not put forth evidence that there is alternative work she could perform based on her age, education, and work history, than a finding of disability is required. *Id.* The Defendant argued in response that once the ALJ determined that Ms. Little retained the RFC for a range of light work, it was her burden

to prove that she could not perform her past relevant work and, because the ALJ found she could perform her past relevant work, the ALJ did not need to move on to step five and show there is alternative work she could perform. ECF No. 12 at 14.

The Commissioner is correct. The Supreme Court addressed the relevant burden of proofs in the social security process and made clear that a claimant has the burden to prove that she cannot perform her past relevant work. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992), *as amended* (May 5, 1993) (citing *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir.1983) ("Through the fourth step, the burden of production and proof is on the claimant.")). During the hearing, the ALJ asked the VE about Ms. Little's past work:

ALJ: How about past work first?

VE: The data entry would require, as performed, she could still do it because based on the claimant's testimony, it appears that she did do sitting down periodically and standing/walking periodically, and leaving the workstation to put the bins away and take the coupons. So as performed, that job would comport with the hypothetical.

ALJ: Well, how about as per the Dictionary of Occupational Titles?

VE: No, sir. Based on the Dictionary Occupational Titles, it would be basically a sedentary position and it would require for an individual to stay at the workstation most of the time.

Based on this retort, the ALJ found "[Ms. Little] was able to perform it as it was actually performed by the claimant." R. 543-44. First, the regulations require an evaluation of the claimant's passed relevant work "either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). Additionally, the Fourth Circuit stated in *Pass v. Chater* that "under the fourth step of the disability inquiry, a claimant will be found 'not disabled' if he is capable of performing his past relevant work either as he

performed it in the past *or* as it is generally required by employers in the national economy." 65

F.3d 1200, 1207 (4th Cir. 1995) (emphasis in original).

Second, the regulations specify the analytic process the ALJ must follow with regards to past relevant work:

> Your impairment(s) must prevent you from doing your past relevant work. If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment with the physical and mental demands of your past relevant work. If you can still do this kind of work, we will find that you are not disabled.

20 C.F.R. § 404.1520(f) (citations omitted). The ALJ determined that Ms. Little failed to

demonstrate that she was unable to return to her past relevant work as a computer data entry

operator because it was "light work" as described by Ms. Little. Thus, the ALJ properly

concluded that because Ms. Little was found to be able to perform her past work, even given her

impairments, she was not disabled. Since Ms. Little was found not disabled, the ALJ did not

need to proceed on to step five. Thus, the ALJ did not err by declining to analyze whether there

were other jobs in the national economy that she could perform.


## B. The ALJ Properly Weighed the Medical Evidence and Substantial Evidence Supported His Determination of Ms. Little's Residual Functional Capacity.

Ms. Little claimed that the ALJ erred by not affording greater weight to the opinion of

her treating physician, Dr. Charles, and, according to Ms. Little, Dr. Charles' opinions are in fact

supported by appropriate findings, based on clinical and diagnostic evidence, as well as

supported by hospitalization records. ECF No. 10 at 11-12. Ms. Little also noted that "[t]he ALJ

failed to identify substantial evidence contradicting the opinions from Dr. Charles," and also

wrongly placed "undue weight on [Ms. Little's] activities of daily living primarily within the

home as evidence [she] can work a full-time job." *Id.* at 12-13. Lastly, Ms. Little claimed that the ALJ erred by relying in part on the opinions from the non-examining state agency medical consultants. *Id.* at 13. The ALJ found, in sum, Dr. Charles' opinions inconsistent with progress notes and gave only his opinions "little weight." *Id.* However, the ALJ gave "moderate weight" to the opinions from the non-examining state agency medical consultants. *Id.*

Under the "treating physician rule," the opinion of a claimant's treating physician should be given great weight, and may be disregarded "only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *see also* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). If any of the evidence is inconsistent, the ALJ must decide which evidence should receive controlling weight. 20 C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d). The regulations do not require that an ALJ accept opinions from a treating physician in every situation, for example, when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Acting Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well-supported. *Jarrells v. Barnhart*, No. 7:04–CV–411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). The ALJ must articulate the reasons for the weight given to the treating source's medical opinions, 20 C.F.R. § 404.1527(d)(2), and specific supporting evidence must be cited so that a reviewing court can discern the basis for the decision. *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 519 (D. Md. 2002); *see also Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Pursuant to 20 C.F.R. § 404.1527(c), unless a treating physician's medical

opinion is afforded controlling weight, the ALJ must consider non-exhaustive factors, which include whether: (1) the physician has examined the claimant; (2) the physician has treated the claimant, and the nature, extent, and length of the treatment relationship; (3) the medical opinion is supported by relevant evidence, particularly medical signs and laboratory findings; (4) the opinion is consistent with the record as a whole; (5) the treating physician is a specialist in the field of which he is opining; and (6) other factors. 20 C.F.R. § 404.1527(c)(1)-(6).[4]  The ALJ is also required to articulate the reasons for the weight given to a treating source's medical opinions. *Id.* § 404.1527(d)(2).

Here, substantial evidence in the record supports the ALJ giving little weight to the opinion of Dr. Charles because his opinions are inconsistent with the other evidence in the record.  Specifically, the ALJ found that Dr. Charles' opinion regarding Ms. Little's TIA symptoms were not supported by medical evidence but in fact were "based solely on [Ms. Little's] own report made just a few days earlier."  R. 537.  Again, the ALJ found that Dr. Charles' specific report that Ms. Little is in fact disabled was again based on Ms. Little's own statements and that it was inconsistent with his own findings or with those findings of Dr. Holland, as well as Ms. Little's testimony regarding her daily activities. *Id.* at 542.  Substantial evidence in the record supports the ALJ's determination that Dr. Charles' opinion is not consistent with the objective medical evidence in the record.  Ms. Little's medical records do not demonstrate that she was disabled between the date of her TIA, July 29, 2008 and the date she was last insured, September 30, 2008.

First, Dr. Charles indicated in his notes after a TIA follow-up appointment with Ms. Little that nothing aggravated her symptoms and that all symptoms were "relieved by

---

[4] The same factors and considerations in evaluating medical opinion evidence apply equally to a claimant's DBI and SSI claims. *See* 20 C.F.R. §§ 404. 1527(c)(1)-(6); *see also* 20 C.F.R. §§ 416.927(c)(1)-(6).

medication." *Id.* at 364. Second, though Dr. Charles indicated in his February 2009 letter that his recollection of Ms. Little after her TIA rendered her "unable to perform her job indefinitely," *id.* at 246, his own progress notes from October 2008 contradict that statement, finding that she had very few issues other than sleeping problems, and did not have neurological symptoms or functional limitations due to the TIA at that time, *id* at 359-60. Dr. Charles did mention that she had muscle aches associated with her TIA but that they were mild. *Id.* at 366. In December of 2008, Dr. Charles stated on a MIQ that Ms. Little did not have any pain. *Id.* at 187. He also left multiple areas blank and did not address with much specificity at all any conditions that rendered her unable to work. "Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given." *Dunn v. Colvin*, 607 F. App'x 264, 268 (4th Cir. 2015); *Terrell v. Colvin*, No. 2:14CV14, 2015 WL 966256, at *10 (E.D. Va. Mar. 4, 2015) (assigning less weight to a treating physician when his notes were sparse, he did not check all the boxes on the questionnaire, and he did not always support his conclusions with medical evidence); *Cummins v. Colvin*, No. 2:14CV165, 2015 WL 1526188, at *3 (E.D. Va. Apr. 2, 2015) (finding that the claimant's treating physician's opinions lacked written explanations and was inconsistent with other available evidence).

Third, evidence in the record indicates that Ms. Little's symptoms were relieved by medication. R. 364. Dr. Charles' opinions and notes are mostly related to Ms. Little's subjective complaints and not his evaluation or medical tests. *See id.* Further, Dr. Charles' conclusion that Ms. Little has conditions that are permanent because of her TIA disability, contradicts his own statement that she has mostly recovered and that her TIA was stable as of August 2009. *Id.* at 225.

Finally, Dr. Charles' opinion on Ms. Little's inability to perform work-related activities is also contrary to the evidence in the record. Ms. Little completed a function report in August of 2008, a month after her onset date, in which she reported that in addition to caring for her granddaughter a few days a week, she could walk for thirty minutes, cook, do light chores such as laundry and cleaning, read, use the computer, and watch television. *Id.* at 107-11. At the hearing she testified similarly to some things but in fact stated that she could not do any shopping during that time period and that her husband had to do all of it. *Id.* at 575. She also mentioned that she could only walk for a little bit but had to take breaks to rest a lot. *Id.* at 577-78. Dr. Charles' opinions and notes are mostly related to Ms. Little's subjective complaints and not his evaluation or medical tests. Further, contrary to Ms. Little's argument, it was not improper for the ALJ to consider Ms. Little's ability to perform daily activities as part of the comparison to her treating physician's conclusions and the other medical evidence in the record. Ms. Little's ability to complete these daily activities and the objective medical evidence do not support Dr. Charles' recommendation that Ms. Little is not able to work. *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) ("The regulations provide that a treating physician's opinion is entitled to controlling weight only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); *Baxter v. Astrue*, No. 3:11-CV-679, 2013 WL 499338, at *4 (E.D. Va. Feb. 7, 2013) (stating that if the treating doctor's opinion is inconsistent with other substantial evidence in the record, or is not well supported by medically acceptable techniques, that opinion will not be given controlling weight); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p. Thus, substantial evidence supports the ALJ's decision to afford little weight to Dr. Charles' opinion because his opinion of her inability to work is "inconsistent with [his] treatment notes contained

18

throughout [Ms. Little's] medical records." *Dunn*, 607 F. App'x at 270. Lastly, even assuming, however, that this opinion is a medical opinion due special weight under the treating-physician rule, any error in failing to credit this opinion was harmless as there was substantial evidence in the record to counter this opinion. *See Morgan v. Barnhart*, 142 F. App'x 716, 722-23 (4th Cir. 2005).

The ALJ also found that Ms. Little only sought conservative treatment for her TIA symptoms during the time between her onset date and her DLI, which did not include physical therapy, surgeries, or significant visits with her treating physician. Even Dr. Charles indicated that he only saw Ms. Little two to three times a year, *id.* at 225, and that her condition was relatively stable and was generally relieved by medication, *id.* at 225, 364. This is inconsistent with the level of limitations asserted by Ms. Little during her testimony. The ALJ is permitted to consider the fact that Ms. Little only sought a conservative course of treatment and that it proved effective. SSR 96-7p (providing that the ALJ may consider a claimant's daily activities, as well as the effectiveness of any medication that the claimant takes and the treatment that the claimant receives for relief of pain and other symptoms).

As for Ms. Little's assertion that the ALJ afforded undue weight to the opinions of the non-examining state agency physicians, the ALJ may consider the opinions of such physicians pursuant to SSA regulations. 20 C.F.R. §§ 404.1527(f) and 416.927(f). The state agency consultants' opinions were based on Ms. Little's medical records at the time of the reconsideration determination, which included both the limitations of Ms. Little's TIA as well as new evidence received in the course of developing her case for the administrative hearing. R. 543. The consultants found that though she did not have a severe impairment stemming from her TIA, she did have severe musculoskeletal impairments regarding her knee and back. *Id.* The

ALJ reasonably assigned significant evidentiary weight to the opinions of the state agency medical consultants, who found Ms. Little capable of performing limited light work. *Id.*

## C. The ALJ Properly Evaluated Ms. Little's Credibility in Determining Her Ability to Perform Substantial Gainful Activity.

Ms. Little argued that the ALJ failed to properly evaluate Ms. Little's credibility. ECF No. 10 at 16-19. The ALJ found Ms. Little's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however her statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC assessment. R. 540-41. The ALJ's credibility assessments are to be given deference. *See N.L.R.B. v. Lee Hotel Corp.*, 13 F.3d 1347, 1351 (9th Cir. 1994) ("The ALJ's credibility determinations should not be reversed unless inherently incredible or patently unreasonable"); *see also Jones v. Sullivan*, 738 F. Supp. 991, 996 (E.D. Va. 1990) ("In *Shively*, the Fourth Circuit stated that '[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.'") (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). Therefore, the Court's analysis is restricted to determining whether the ALJ's decision is supported by substantial evidence and whether the ALJ applied the appropriate legal standard. *Craig*, 76 F.3d at 589.

In evaluating a claimant's subjective complaints regarding pain or other symptoms, the ALJ must follow a two-step process: (1) determine whether there is objective medical evidence in the record that shows the existence of a medical impairment or impairment that could reasonably expected to produce the pain or other symptoms alleged; and (2) evaluate the

intensity and persistence of the claimant's pain and symptoms and the extent to which they affect his ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *see also Craig*, 76 F.3d at 594-95; SSR 96-7p. In conducting the second step of the analysis, the ALJ is required to make a credibility determination "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *2; *see also* 20 C.F.R. § 404.1529(c)(4).

The ALJ determined that Ms. Little met step one because the record contained evidence of several conditions that could reasonably be expected to produce some of the pain that Ms. Little exhibited. R. 540. To make the credibility assessment at step two, the ALJ "considered not only the objective medical evidence, but her medical history, the character of her symptoms, precipitating and aggravating factors, the type of treatment used to relieve her pain/symptoms, her response to medications and treatment, her restricted daily activities, her work history and how past jobs ended, and the statements of treating and examining sources regarding the severity of her overall condition." R. 541.

The ALJ first noted that though Ms. Little's alleged onset date is July 29, 2008, the day she had a TIA, "[t]here is no additional evidence of treatment . . . through the expiration of [Ms. Little's] insured status." R. 541. The ALJ noted that though Ms. Little was hospitalized on July 29, 2008 because she was experiencing "intense confusion" for which the physicians treated her as having a TIA, an "extensive neurological workup was negative for TIA and physical examination showed no neurological abnormalities." *Id.* And, despite Ms. Little's subjective complaints regarding her anxiety, she had no history of mental health treatment, and was determined to be "negative for depression, nervousness, and anxiety, showing no signs of disturbance of mood, memory, affect, or judgment." *Id.* Further, Ms. Little complained she had

21

constant and exacerbating pain when sitting, bending, and lifting. *Id.* The ALJ noted that she did have a history of degenerative disc disease, lumbar radiculopathy, sciatica, and degenerative joint disease that began before her onset date. *Id.* However, the ALJ noted that her medical records showed few abnormalities and at most showed paravertebral muscle spasms and tenderness of the lumbar spine with a good range of motion in her knees, shoulders, and elbows with no swelling. *Id.* She also was never prescribed an assistive device for ambulation despite the fact she testified she used such assistance a lot. *Id.* The ALJ considered the fact that the "clinical diagnosis of degenerative joint disease was offered based on the claimant's *subjective* pain complaints." *Id.* at 541-42 (emphasis added).

When reviewing her medical records, the ALJ noted that "[p]rior to the expiration of [Ms. Little's] insured status, [Ms. Little] only required very conservative treatment for pain." *Id.* at 542. Even Dr. Charles, Ms. Little's treating physician, noted in August of 2009 that he only saw her two or three times per year for her arthritic condition and also noted that her TIA was fairly stable without further episodes or symptoms. *Id.* It was not unreasonable for the ALJ to consider the lack of treatment Ms. Little received during the time she was insured in evaluating Ms. Little's credibility. *See Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (noting that "an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility"); *Ledford v. Astrue*, No. 3:07-CV-1148-GRA, 2008 WL 4372778, at *3 (D.S.C. Sept. 18, 2008) (finding that "a failure to seek medical treatment may support a finding that the claimant's allegations of disability are not fully credible"); *Dunn*, 607 F. App'x at 273 ("[T]his Court has long held that it is appropriate for the ALJ to consider the conservative nature of a plaintiff's treatment—among other factors—in judging the credibility of the plaintiff.").

Ms. Little testified to performing light household chores, including folding laundry, occasionally shopping with her husband, walking around the park, using the computer for short periods of time, visiting with her grandchildren, preparing simple meals three days a week, watching television, reading, socializing, and managing her own finances. R. 542. While a claimant's ability to participate in limited household chores by itself does not prove that she has the ability to perform substantial gainful activity, the ALJ is allowed to consider these activities among other factors.  20 C.F.R. § 404.1529(c)(3).  Further, evidence of the claimant's daily activities or ability to function while on medication may undermine the claim of disability. *Baxter v. Astrue*, 3:11-CV-679, 2013 WL 499338 (E.D. Va. Feb. 7, 2013).  The ALJ found that participation in these daily activities "is inconsistent with her allegations of significantly diminished memory and concentration, anxiety, and severe pain." R. 542.  Further, the ALJ did not equate Ms. Little's daily activities with the requirements of working a full eight-hour day, but reasonably found her RFC limited to light work with exceptions. *Id.* at 543.

The ALJ provided substantial evidence to support his credibility finding.  Based on objective medical evidence, he reasonably concluded the findings did not substantiate Ms. Little's claims of pain intensity and symptoms. Several medical examinations and consultations revealed normal results and were inconsistent with the intensity of pain as described by Ms. Little.  *Id.*  Further, her own testimony revealed she is capable of performing light housework and chores, which are permitted to be relied upon by the ALJ in determining the assessment of credibility.    Therefore, the ALJ's credibility determination was supported by substantial evidence, and he did not err in concluding that despite some pain and difficulty in some routine activities, Ms. Little is able to perform light work.

## VII.  RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Ms. Little's Motion for Summary Judgment or for Remand, ECF Nos. 8and 9, be **DENIED**; the Defendant's Motion for Summary Judgment, ECF No. 11, be **GRANTED**; the final decision of the Acting Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VIII.  REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
December 22, 2015